Theodore B. Olson (#38137)
TOlson@gibsondunn.com
Helgi C. Walker (Pro Hac Vice)
HWalker@gibsondunn.com
Michael R. Huston (#278488)
MHuston@gibsondunn.com
Jacob T. Spencer (Pro Hac Vice)
JSpencer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8668
Facsimile:    202.530.9575

Joshua S. Lipshutz (#242557)
JLipshutz@gibsondunn.com
Joshua D. Dick (#268853)
JDick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone:    415.393.8233
Facsimile:    415.374.8469

*Attorneys for Plaintiff*
*CTIA – The Wireless Association®*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CTIA – THE WIRELESS ASSOCIATION®, <br><br>            Plaintiff, <br><br>     v. <br><br> THE CITY OF BERKELEY, CALIFORNIA, and CHRISTINE DANIEL, CITY MANAGER OF BERKELEY, CALIFORNIA, in her official capacity, <br><br>            Defendants. | **CASE NO. 3:15-cv-02529** <br><br> **PLAINTIFF'S [PROPOSED] BRIEF IN RESPONSE TO [PROPOSED] BRIEF OF AMICUS CURIAE NATURAL RESOURCES DEFENSE COUNCIL** <br><br> Date:   August 20, 2015 <br><br> Time:  1:30 PM <br><br> Place:  Courtroom 5, 17th Floor, San Francisco |

# INTRODUCTION

The City of Berkeley wants to force CTIA's members to convey its inaccurate and misleading message that cell phones are dangerous, especially for children. Yet it has expressly *disclaimed* reliance on any actual, scientifically-based risk that cell phones approved for sale in the United States pose any health or safety risk to consumers, contrary to the repeated determinations of federal regulators. Rather than defend the merits of the message at issue in this case, Natural Resources Defense Council ("NRDC") claims that applying well-established First Amendment doctrine to the Ordinance would "undermine . . . legions of risk-disclosure rules." Proposed Br. Amicus Curiae NRDC in Opp. ("Amicus"), Doc. 36-1, at 1. The central premise of NRDC's argument—that deciding the level of "risk sufficient to mandate disclosure is a quintessentially legislative task," *id.* at 2—is not even implicated here: the City made *no* determination of *any* risk, and instead regulated based on inchoate "moral and ethical" concerns. Moreover, none of NRDC's examples would fall with Berkeley's Ordinance, because none are misleading, and all are premised on at least *some* actual risk of harm. In fact, when this Court and the Ninth Circuit invalidated a substantially similar San Francisco Ordinance, the sky did not fall—proving that NRDC's fears are exaggerated.

A preliminary injunction here would simply confirm that when a federal regulator finds there is *no known health risk* from a device, when used in certain ways, and a local government itself disclaims any contrary science, the local government cannot mandate that commercial speakers issue a "safety" warning that describes a "potential risk" from "radiation" that is "greater for children." This case thus does *not* involve, as NRDC posits, the policy question whether to regulate based on an actual, albeit slight, health risk. Berkeley has simply not done so here. If Berkeley wishes to disseminate its unfounded and alarmist message, it is free to do so itself. But the First Amendment precludes it from conscripting CTIA's members as its messengers.

# ARGUMENT

**I.    Berkeley Has No Legitimate Interest In Compelling Inaccurate, Misleading Speech**

Striking down Berkeley's Ordinance, NRDC claims, "could lead to the dismantling of an array of commonsense risk-disclosure requirements." Amicus 1. This is hyperbole. As CTIA has shown, the Ordinance is inaccurate and misleading because it is scripted to convey the City's

unfounded opinion that cell phones are not safe, especially for children. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. ("Mem."), Doc. 4, at 14–16; Pl.'s Reply in Supp. of Mot. for Prelim. Inj. ("Reply"), Doc. 38, at 6–10. Accordingly, Berkeley can have no legitimate interest, much less a substantial or compelling interest, in forcing CTIA's members to broadcast it, *see Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2009), *aff'd*, 131 S. Ct. 2729 (2011), whatever the City itself might choose to say about the issue.

The misleading and inaccurate nature of the City's ordinance distinguishes it from *every other* disclosure requirement cited by NRDC. Just like "[t]he disclosures approved in *Zauderer* and *Milavetz*," these requirements include only "clear statements that [are] both indisputably accurate and not subject to misinterpretation by consumers." *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1216 (D.C. Cir. 2012), *overruled on other grounds*, *Am. Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014). Prop 65, for instance, requires "clear and reasonable" statements that a product contains chemicals known to the State of California to cause cancer or birth defects. Cal. Health & Safety Code § 25249.6. Those statements are indisputably accurate—a chemical is subject to the requirement "if in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity," or if it meets similarly rigorous criteria. *Id.*, § 25249.8. And they are not subject to misinterpretation—exposures that pose "no significant risk" are exempt. *Id.*, § 25249.10(c). Similarly, there is nothing misleading about the Nutrition Labeling Act, OSHA, the Safe Drinking Water Act, or any other statute cited by NRDC, all of which concern objectively verifiable risks.

NRDC does not dispute that Berkeley cannot compel misleading speech. And NRDC does not seriously defend the Ordinance. Instead NRDC echoes the City's refrain that the Ordinance merely "amplifies" disclosures required by the FCC, "in a more effective way." Amicus 3, 9. As CTIA has explained, however, the Ordinance mandates a very different message than the ones manufacturers provide, in the exercise of their own editorial discretion, and that will mislead consumers about a "potential safety risk" from RF energy. Reply 11–12. It is *Berkeley*, not CTIA, that seeks to "second-guess" the FCC's "policy judgment" about *what* information should be conveyed to consumers and the *manner* in which it should be conveyed, or what *actual* risks should

be disclosed, Amicus 4, 9–10, in order to balance the goals of providing accurate information without stoking anxiety or discouraging cell phone use, Mem 18–19.

## II. The Ordinance Is Not Grounded In Any Evidence Of Real Health And Safety Risk

NRDC contends that courts should not determine whether, when government action implicates protected speech, the government has shown a "*real* health or safety concern." Amicus 6. This is not "judicial second-guessing" of legislative judgments. *Id.* at 7. It is the application of foundational and binding Supreme Court precedent. To justify infringement of speech, the government "must demonstrate that the harms it recites are real" and that its regulation "will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993). "If the protections afforded commercial speech are to retain their force," courts "cannot allow rote invocation of the words 'potentially misleading' to supplant the [government's] burden to demonstrate that the harms it recites are *real*." *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 146 (1994) (citation omitted; emphasis added). So too for rote invocation of the words "potentially harmful."

Indeed, unlike every other example in NRDC's brief, the warning mandate at issue in *this* case is admittedly not grounded in *any* evidence that exposure to RF energy in excess of the FCC's guidelines from cell phones approved for sale in the United States poses *any* health or safety risk. *See, e.g.*, Compl. ¶¶ 92–93; Mem. 6, 8, 10; Reply 4–5. During the legislative hearings, the sponsor of the Ordinance expressly stated that the measure "is not [about] the science" and made clear that the City did not do any "studies that would yield the information" needed to regulate even on a "precautionary" level. Mem. 10. Indeed, he recently *reaffirmed* that he "appealed to his colleagues . . . to pass the ordinance on ethical grounds. 'Even if the science isn't firm, *if* there is a risk, we should proceed with caution.'" Carol Pogash, Cellphone Ordinance Puts Berkeley at Forefront of Radiation Debate, N.Y. Times (July 21, 2015), available at http://goo.gl/ZxYPnA (emphasis added).

Thus, NRDC's insistence that this Court refrain from reviewing "Berkeley's reasoned judgment"—or that this case creates a general threat of intrusion on legislative judgment—rings hollow. Amicus 7; *see also, e.g.*, *id.* at 2, 6, 8, 9. Berkeley *never made* any judgment, supported by science, "that exposure" to RF energy in excess of the FCC's guidelines "poses a risk of harm." *Id.* at 2. Indeed, the City disclaimed any intention of taking on that task. This case is therefore just like

*International Dairy Foods Ass'n v. Amestoy*, where the state unsuccessfully defended its dairy labeling requirement "on the basis of strong consumer interest and the public's 'right to know.'" 92 F.3d 67, 73 (2d Cir. 1996) (quotation marks omitted). Those interests were found to be "insufficient to justify compromising protected constitutional rights," because the state "fail[ed] to defend its constitutional intrusion on the ground that it negatively impact[ed] public health." *Id.* Indeed, the state could not do so, because the relevant federal regulator had concluded "that there [were] no human safety or health concerns associated with food products derived from cows treated with rBST." *Id.* (quotation marks omitted). Thus, the state "could not justify the statute on the basis of 'real' harms." *Id.* (quoting *Edenfield*, 507 U.S. at 770–71).

So too here, the FCC—which regulates RF emissions from cell phones—possesses "no evidence" that excess exposure from the cell phones it approves poses "any significant health risk." *In re Reassessment of FCC Radiofrequency Exposure Limits & Policies*, 28 FCC Rcd. 3498 (¶ 251) (2013) ("*Reassessment*"). Merely pointing out that RF energy can "cause harm at some levels" (Amicus 4), does not show that there is any meaningful risk from FCC-approved phones that emit RF energy at much lower levels. Unlike the hazardous substances subject to certain disclosure requirements, such as tobacco smoke (*id.* at 5) or lead (*id.* at 5), RF energy does not pose a known health risk until it reaches a particular threshold level, Compl. ¶¶ 28, 30. As the FCC has recently noted, its "limits were set with a large safety factor, to be well below" that threshold. *Reassessment*, ¶ 251. And, it explained, "exceeding the SAR limit does not necessarily imply unsafe operation, nor do lower SAR quantities imply 'safer' operation." *Id.* Given that threshold effect and "the considerable safety margin" in its exposure guidelines, the FCC has sought comment on whether exposure resulting from "inattention to manual instruction" "constitute[s] a health hazard." *Id.*, ¶ 252. Berkeley cannot leap-frog the FCC's careful deliberation and infringe CTIA's members' protected speech without any countervailing evidence of a legitimate health or safety risk.

NRDC mischaracterizes CTIA's argument when it says that CTIA invites the Court to invent an arbitrary "threshold below which an acknowledged risk would be deemed insufficiently serious to mandate a warning." Amicus 2. Again, CTIA simply asks this Court to perform the necessary and appropriate judicial function of holding Berkeley to its legal "burden" of showing that that there is

*some* risk of harm—that is, "that the harms it recites are real." *Ibanez*, 512 U.S. at 146. Nor does CTIA ask the Court to "[r]eanalyz[e] the validity" of a "public-health risk." Amicus 8. Berkley, by its own admission, never analyzed that question *at all*, so there is nothing to "reanalyze" here.

Having elected to sidestep the science—in an effort to avoid having to engage on the consistent, scientifically-based findings of federal regulators regarding RF emissions—the City must live with its choice to regulate instead based on the "right to know" and "moral and ethical" considerations. Recognizing that the Ordinance is not founded on any actual evidence of harm (as the City has conceded), and that any such purported evidence would contradict the FCC's views, would not call into question the government's interest in mandating accurate, even-handed, and factual disclosures about real risks, regardless of degree. As explained above, all of NRDC's examples, from Congress's 1965 warning "that cigarette smoking *may be* hazardous to health," Amicus 2–3, to California's mandate that employers "provide information to their employees about the hazardous chemicals to which they may be exposed," *id*. at 4, to the lead-based paint disclosure requirement, *id.* at 5, involve real (although perhaps, in some cases, low-probability) risks. CTIA's argument, which simply depends on the application of well-established First Amendment precedent, thus does not place any of them "in the constitutional crosshairs." *Id*. at 3.

By contrast, NRDC's argument would dramatically shrink existing First Amendment freedoms, in ways the Supreme Court has rejected, by permitting governments to curb speech "in the service of other objectives that could not themselves justify a burden on commercial expression." *Edenfield*, 507 U.S. at 771. On NRDC's theory, Berkeley could, for example, justify a warning mandate about *any* level of RF energy exposure (indeed, about *any* good or service that somebody, somewhere might irrationally believe to be unsafe), even exposure well below the FCC's guidelines, by merely invoking the phrase "potential risk." Or, in *Amestoy*, the state could simply have declared rBST "potentially harmful," and thereby evaded constitutional scrutiny. But the government cannot avoid the First Amendment by "mere speculation or conjecture." *Edenfield*, 507 U.S. at 770.

## CONCLUSION

For these reasons, and those set forth in CTIA's opening and reply briefs, CTIA respectfully requests that the Court grant its preliminary injunction motion.

| | |
|---|---|
| August 6, 2015 | By: /s/ Theodore B. Olson |
| | Theodore B. Olson |
| | Helgi C. Walker |
| | Joshua S. Lipshutz |
| | Joshua D. Dick |
| | Michael R. Huston |
| | Jacob T. Spencer |
| | |
| | GIBSON, DUNN & CRUTCHER LLP |
| | |
| | *Attorneys for Plaintiff* |
| | *CTIA – The Wireless Association®* |