Theodore B. Olson (#38137)
TOlson@gibsondunn.com
Helgi C. Walker (Pro Hac Vice)
HWalker@gibsondunn.com
Michael R. Huston (#278488)
MHuston@gibsondunn.com
Jacob T. Spencer (Pro Hac Vice)
JSpencer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:     202.955.8668
Facsimile:     202.530.9575

Joshua S. Lipshutz (#242557)
JLipshutz@gibsondunn.com
Joshua D. Dick (#268853)
JDick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone:     415.393.8233
Facsimile:     415.374.8469

*Attorneys for Plaintiff*
*CTIA – The Wireless Association®*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CTIA – THE WIRELESS ASSOCIATION®, | **CASE NO. 3:15-cv-02529** |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE INJUNCTION** |
| v. | |
| THE CITY OF BERKELEY, CALIFORNIA, and CHRISTINE DANIEL, CITY MANAGER OF BERKELEY, CALIFORNIA, in her official capacity, | Date:   December 22, 2015 |
| | Time:  1:00 PM |
| Defendants. | Place:  Courtroom 5, 17th Floor, San Francisco |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.    The Amended Ordinance Is Still Preempted Because It Upsets The FCC's
Careful Balance Between Competing National Objectives ......................................... 1

II.    The Amended Ordinance Violates The First Amendment ........................................... 4

    A.    The City's Compelled Speech Requirement Is Subject To Heightened
Scrutiny, Not *Zauderer* Or Some Even Lower Standard .................................. 4

        1.    *Zauderer* Does Not Apply Here Because The Amended
Ordinance Does Not Correct Misleading Or Deceptive
Voluntary Advertising ........................................................................... 5

        2.    This Court's Decision To Excuse Even *Zauderer*'s Less-
Exacting Requirements Is Erroneous And Unprecedented .................. 7

    B.    The Amended Ordinance Is Unconstitutional Even Under *Zauderer* .............. 9

        1.    The Amended Ordinance Does Not Advance Any Legitimate
Interest ................................................................................................. 10

        2.    The Amended Ordinance Is Misleading ............................................. 12

        3.    The Amended Ordinance Is Controversial .......................................... 14

        4.    The Amended Ordinance Is Unduly Burdensome .............................. 15

III.    Despite The City's Amendment, The Preliminary Injunction Continues To Be
Necessary .................................................................................................................. 15

IV.    In The Alternative, This Court Should Grant CTIA An Injunction Pending
Appeal ...................................................................................................................... 17

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Meat Inst. v. USDA,*
   760 F.3d 18 (2014) ......................................................................................... 6, 8, 10, 14, 15

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of NY,*
   447 U.S. 557 (1980) ..................................................................................................... 5

*Conservation Cong. v. U.S. Forest Serv.,*
   803 F. Supp. 2d 1126 (E.D. Cal. 2011) ..................................................................... 17

*Crazy Ely Western Village, LLC v. City of Las Vegas,*
   — F. App'x —, 2015 WL 4465730 (9th Cir. July 22, 2015) ................................. 6, 10

*CTIA-Wireless Ass'n v. City & Cnty. of S.F.,*
   494 F. App'x 752 (9th Cir. 2012) ........................................................................ 9, 14, 15

*Disc. Tobacco City & Lottery, Inc. v. United States,*
   674 F.3d 509 (6th Cir. 2012) ...................................................................................... 15

*Dwyer v. Cappell,*
   762 F.3d 275 (3d Cir. 2014) ....................................................................................... 14

*Edenfield v. Fane,*
   507 U.S. 761 (1993) ............................................................................................. 9, 10, 12

*Entm't Software Ass'n v. Blagojevich,*
   469 F.3d 641 (7th Cir. 2006) .................................................................................. 7, 14

*Evergreen Ass'n v. City of New York,*
   740 F.3d 233 (2d Cir. 2014) ................................................................................... 9, 14

*Farina v. Nokia, Inc.,*
   625 F.3d 97 (3d Cir. 2010) ..................................................................................... 2, 3, 4

*Ibanez v. Dep't of Bus. and Prof'l Regulation,*
   512 U.S. 136 (1994) ..................................................................................................... 5

*In re R. M. J.,*
   455 U.S. 191 (1982) .................................................................................................. 5, 6

*Int'l Dairy Foods Ass'n v. Amestoy,*
   92 F.3d 67 (2d Cir. 1996) ...................................................................................... 4, 7, 11

*Nat'l Ass'n of Mfrs. v. NLRB,*
   717 F.3d 947 (D.C. Cir. 2013) ..................................................................................... 8

**TABLE OF AUTHORITIES** *(continued)*

*Nat'l Ass'n of Mfrs. v. SEC*,
Page(s)
748 F.3d 359 (D.C. Cir. 2014) ................................................................... 14

*Nat'l Ass'n of Mfrs. v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) ................................................... 6, 10, 14, 15

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2015) ............................................................................... 13

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
475 U.S. 1 (1986) ................................................................................ 7, 8, 15

*R.J. Reynolds Tobacco Co. v. FDA*,
696 F.3d 1205 (D.C. Cir. 2014) ................................................................. 14

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015) ................................................................................. 4

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs.*,
472 F.3d 1097 (9th Cir. 2006) .................................................................... 17

*Sharp v. Weston*,
233 F.3d 1166 (9th Cir. 2000) ...................................................................... 1

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
709 F.3d 1281 (9th Cir. 2013) .................................................................... 16

*Sorrell v. IMS Health Inc.*,
131 S. Ct. 2653 (2011) .................................................................... 4, 5, 6, 11

*Stuart v. Camnitz*,
774 F.3d 238 (4th Cir. 2014) ...................................................................... 14

*Thalheimer v. City of San Diego*,
645 F.3d 1109 (9th Cir. 2011) ...................................................................... 9

*United States v. United Foods, Inc.*,
533 U.S. 405 (2001) .............................................................................. 6, 7, 8

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) .................................................................... 10

*Video Software Dealers Ass'n v. Schwarzenegger*,
556 F.3d 950 (9th Cir. 2009),
*aff'd* by 131 S. Ct. 2729 (2011) ................................................................. 10

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
135 S. Ct. 2239 (2015) ................................................................................. 4

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Williamson v. Mazda Motor of Am., Inc.*,
    131 S. Ct. 1131 (2011) ............................................................................................ 3

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................... 15

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ........................................................................................... 4, 7

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
    471 U.S. 626 (1985) ........................................................................................... 5, 6

**Statutes**

Berkeley Municipal Code § 9.96.010 ....................................................................... 10

Berkeley Municipal Code § 9.96.030 .................................................. 2, 8, 12, 13

**Rules**

Fed. R. Civ. P. 62 ...................................................................................................... 17

**Regulations**

47 C.F.R. § 2.1093 ...................................................................................................... 3

**Other Authorities**

FCC KDB, No. 447498, *General RF Exposure Guidelines*, § 4.2.2 .................... 3

FCC, *Radiofrequency Safety: Frequently Asked Questions* .............................. 13

FCC, *Wireless Devices and Health Concerns* ...................................................... 2, 3

*In re Reassessment of FCC Radiofrequency Exposure Limits & Policies*,
    28 FCC Rcd. 3498 (2013) ............................................... 2, 3, 11, 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Berkeley's Ordinance, even as amended, is preempted by federal law and contrary to the First Amendment. Even without the baseless sentence about the dangers of cell phones for children, the overall message—that cell phones are unsafe—remains the same. Thus, the Amended Ordinance will "materially deter sales [of cell phones] on an assumption about safety risks which the [Federal Communications Commission] has refused to adopt or endorse." Order, Dkt. No. 53, at 15. And Berkeley seeks to conscript CTIA's members to convey a message about cell phone safety that is not purely factual and uncontroversial, but is a gross misrepresentation of settled science and the FCC's nuanced position. CTIA respectfully requests that this Court continue to enjoin the Ordinance pending further proceedings or, at least, pending appeal of any order dissolving the injunction.

**ARGUMENT**

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). Circumstances have changed somewhat, but not in ways that would make the Ordinance lawful. Because the Amended Ordinance is still preempted and still violates the First Amendment, Berkeley cannot carry its burden to show that dissolution is warranted. CTIA continues to satisfy the four-pronged test for a preliminary injunction, *see* Mem. in Support of Prelim. Inj., Dkt. No. 4, at 6–7,[1] and this Court should thus deny Berkeley's motion to dissolve the injunction. Alternatively, this Court should continue to enjoin the Ordinance until it can be examined on appeal.

**I.    The Amended Ordinance Is Still Preempted Because It Upsets The FCC's Careful Balance Between Competing National Objectives**

This Court correctly held that the City's original Ordinance was preempted because its language "threaten[ed] to upset the balance struck by the FCC between encouraging commercial development of all phones and public safety." Order 15; *see also id.* 11–13 (describing Congress's purposes as balancing health and safety with "providing . . . efficient and practical

---

[1]   CTIA incorporates by reference its prior briefing on the motion for preliminary injunction, to the extent relevant here.

telecommunications services" and ensuring "nationwide uniformity").  Forcing CTIA's members to convey unfounded "special warnings," this Court reasoned, "could materially deter sales on an assumption about safety risks which the FCC has refused to adopt or endorse."  *Id.* at 15.  Berkeley's Amended Ordinance suffers from the same fatal flaw:  It mandates a warning that the FCC deliberately chose not to require, about a safety risk that the FCC has denied.

The Amended Ordinance warns consumers that they may be at risk of "exceed[ing] the federal guidelines for exposure to RF radiation," and exhorts them to carry their phones in a particular way in order to "use [the] phone[s] safely."  Berkeley Municipal Code § 9.96.030.  Berkeley does not "simply refer[ ]" consumers to "FCC standards" and "their manuals" for information about maintaining minimum separation from their bodies.  *Contra* Order 14.  Instead, the City suggests to consumers that they are *unsafe* if they do not maintain that separation.  The City has always contended that the Ordinance is necessary in order to "change [consumers'] behavior" so that they are exposed to only "safe levels" of RF radiation.  Defs.' Opp. to Mot. for Prelim. Inj., Dkt. No. 33, at 2−4, 23.  Thus, like the plaintiffs in *Farina v. Nokia, Inc.*, in order to show a legitimate basis for the Amended Ordinance, Berkeley "necessarily must establish that cell phones abiding by the FCC's SAR guidelines are unsafe to operate without" further warnings at the point of sale.  Order 12 (quoting *Farina*, 625 F.3d 97, 122 (3d Cir. 2010)).

But the FCC's most recent pronouncement on RF energy from cell phones says exactly the opposite.  According the FCC, "exceeding the SAR limit does *not* necessarily imply unsafe operation," and "exposure well about the specified SAR limit should *not* create an unsafe condition."  *In re Reassessment of FCC Radiofrequency Exposure Limits & Policies*, 28 FCC Rcd. 3498 (2013) ("*Reassessment*"), ¶ 251 (emphasis added).  Further, the FCC has "no evidence" that RF exposure from an approved phone in excess of its guidelines "poses any significant health risk."  *Id.*  A fair portrayal of the FCC's views on cell phone safety cannot focus selectively on FCC statements about "simple steps that you can take to reduce your exposure to RF energy" while simultaneously ignoring the FCC's explicit statement that it "**does not endorse the need for these practices.**"  FCC, *Wireless Devices and Health Concerns* ("*Consumer Guide*"), *available at* https://goo.gl/5mUjeo, *quoted in* Order 14.  Berkeley insists "that its notice is simply designed to reinforce a message that the FCC

already requires," Order 15, but in fact Berkeley's message *conflicts* with the FCC's own statements: Berkeley endorses the need for consumers to change their behavior; the FCC does not.

Similarly, the Amended Ordinance conflicts with the FCC's disclosure requirement. The FCC does not dictate the content of CTIA's members' user manuals regarding separation distance, much less force them to declare that some ways of carrying the phone must be avoided in order to use it "safely." Instead, the FCC affords cell phone manufacturers the flexibility to convey accurate information about compliance without alarming consumers. *See* FCC KDB, No. 447498, *General RF Exposure Guidelines*, § 4.2.2(4). As this Court recognized, the FCC's regulations are not "a regulatory floor upon which [municipalities] can build," but reflect a careful balancing of competing national objectives. Order 12. Thus, it is of no moment that the FCC has not *specifically pronounced* an "objection to warning consumers about maintaining spacing between the body and a cell phone. *Id.* at 14. The FCC has shown its disagreement with Berkeley's approach by making a determination about both what to require and not to require. *See Farina*, 625 F.3d at 123. Berkeley insists on a standalone warning label, whereas the FCC made a deliberate decision *not* to require a warning label regarding RF energy for consumers (as opposed to "occupational" settings, where the FCC does require warning labels or some other notice). *See* Mem. 20 (citing 47 C.F.R. § 2.1093(d)(2)). Berkeley may not strip CTIA's members of discretion that the FCC has expressly preserved. *See Williamson v. Mazda Motor of Am., Inc.*, 131 S. Ct. 1131, 1136–37 (2011).

Unlike Berkeley's message, the FCC's nuanced and scientifically grounded advice is intended to *reassure* consumers who are "skeptical of the science," *Consumer Guide*, not to *scare* consumers about RF "radiation." When the FCC discusses the possibility that cell phones carried "without the use of some spacer" might result in excess RF exposure, it also describes the "large safety factor" built into its guidelines, such that "a use that possibly results in non-compliance with the SAR limit should not be viewed with significantly greater concern than compliant use." *Reassessment*, ¶ 251. And it notes that "using a device against the body without a spacer will generally result in actual SAR below the maximum SAR tested." *Id.* The Amended Ordinance intentionally omits all of this important information—which directly refutes the City's "safety" message—in order to exaggerate the risk so that consumers will be scared into changing their behavior. But the FCC does not agree

with Berkeley's imagined "safety" risk, and it does not want consumers to be asked to change their behavior in this way. *See Farina*, 625 F.3d at 123, 125 (allowing state law to "re-balance the FCC's statutory objectives [could] inhibit the provision of quality nationwide service"). Accordingly, the Amended Ordinance is preempted.

## II.     The Amended Ordinance Violates The First Amendment

"[T]he First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2253 (2015). That is because freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *see also* Mem. 7; Reply in Support of Prelim. Inj., Dkt. No. 38, at 2–3. The Supreme Court has never held that this right does not apply to merchants or to speech about commercial goods. *Contra* Order 17. On the contrary, "[t]he right not to speak inheres in political and commercial speech alike." *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996).

Even setting aside the parties' disagreement over the appropriate level of scrutiny in this case, the Amended Ordinance contravenes the First Amendment because it requires CTIA's members to convey the City's inaccurate, misleading, and scientifically baseless opinion that cell phones are unsafe. Mem. 7–8.

### A.     The City's Compelled Speech Requirement Is Subject To Heightened Scrutiny, Not *Zauderer* Or Some Even Lower Standard

The Amended Ordinance is a presumptively invalid content-, viewpoint-, and speaker-based regulation of speech. Mem. 8–9. It is therefore subject to heightened scrutiny. *Id.*; Reply 3–4; *see also Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."). The Supreme Court has foreclosed any argument that heightened judicial scrutiny does not apply here simply because the Amended Ordinance attaches to a commercial transaction. *See Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664–67 (2011) (applying heightened scrutiny to a content-based statute that regulated commercial speech). The information that CTIA's members choose to provide, and

not to provide, to consumers regarding cell phones' RF emissions "concern[s] lawful activity" and is not "misleading"—and thus is inarguably protected speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of NY*, 447 U.S. 557, 566 (1980). Accordingly, Berkeley "must show *at least* that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 131 S. Ct. at 2667–68 (emphasis added).[2]

**1.   *Zauderer* Does Not Apply Here Because The Amended Ordinance Does Not Correct Misleading Or Deceptive Voluntary Advertising**

The Supreme Court's holding in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio* was that because the government has the power to *ban* a merchant's misleading speech about products or services, the government can also force that merchant—if he wants to continue to offer potentially deceptive advertising—to include accurate, uncontroversial disclosures with that advertising. 471 U.S. 626, 651 & n.14 (1985). The Court's reasoning was limited to facts where a party has voluntarily put out speech that is potentially deceptive, and the government has intervened to require a clarifying disclosure. That is why *Zauderer* described the potential First Amendment injury at issue as a "chill": If the government required an unreasonable disclosure to accompany the advertisement, then it could chill citizens from speaking through those advertisements. *Id.* at 651; *see also Ibanez v. Dep't of Bus. and Prof'l Regulation*, 512 U.S. 136, 146–47 (1994) (striking down a disclosure requirement as "unduly burdensome" where it "effectively rule[d] out" the particular type of advertisement to which it applied).

The reason why "the government has greater power to regulate commercial speech in order to prevent deception," Order 23, as opposed to its lesser power to regulate commercial speech generally, Order 23, is that deceptive commercial speech is not entitled to any First Amendment protection in the first place. *See In re R. M. J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely. . . . [T]he remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation."). Disclosure mandates, the Supreme Court has explained, are less restrictive than—and thus constitutionally preferable to—outright bans of

---

[2]   CTIA continues to maintain that the same constitutional protection should apply to commercial speech as to any other category of protected speech. Mem. 9 n.1.

misleading commercial speech.  *Id.*  That is why, when the Supreme Court struck down compelled subsidies of commercial speech in *United States v. United Foods, Inc.*, the Court explained that its decision was "not inconsistent" with *Zauderer* because there was "no suggestion" that the subsidies imposed were "somehow necessary to make *voluntary advertisements nonmisleading* for consumers." 533 U.S. 405, 416 (2001) (emphasis added).  *Zauderer* does not govern the Amended Ordinance because Berkeley has not suggested—nor could the City suggest—that it is reasonably related to preventing any consumer deception or correcting any misleading statements by CTIA's members. *See* Mem. 13–14; Reply 3–4.

Zauderer also does not apply because the Amended Ordinance does not target "voluntary advertisements."  *United Foods*, 533 U.S. at 416.  *Zauderer* permits the government, in certain circumstances, to compel a speaker to "include *in his advertising* purely factual and uncontroversial information."  471 U.S. at 651 (emphasis added).  That is because the "constitutionally protected interest in not providing any particular factual information *in his advertising* is minimal."  *Id.* (emphasis altered).  As the D.C. Circuit recently held, "the Supreme Court's opinion in *Zauderer* is confined to advertising, emphatically and, one may infer, intentionally."  *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 522 (D.C. Cir. 2015).  Because the Amended Ordinance does not "involve voluntary commercial advertising," "*Zauderer* has no application to this case."  *Id.* at 523–24.

Zauderer does not hold that *every* compelled commercial disclosure is subject to only relaxed review, even when there is no concern for deception and voluntary advertising is not at issue.  On the contrary, the Supreme Court has held that "the Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans."  *Sorrell*, 131 S. Ct. at 2664 (quotation marks omitted).  Thus, "*Zauderer* is best read simply as an application of *Central Hudson,* not a different test altogether."  Reply 4 (quoting *Am. Meat Inst. v. USDA*, 760 F.3d 18, 33 (2014) (en banc) (Kavanaugh, J., concurring)); *see also Crazy Ely Western Village, LLC v. City of Las Vegas*, — F. App'x —, 2015 WL 4465730, at *2 (9th Cir. July 22, 2015) ("The notice restrictions satisfy the *Central Hudson* test.  The government may compel 'purely factual and uncontroversial' commercial speech.").  To burden CTIA's members with the Amended Ordinance, then, the City must show that the ordinance directly advances a substantial governmental interest, a standard that

the City has not seriously attempted to meet with its vague references to some purported "right to know," an interest that several courts of appeals have rejected.  *See* Mem. 11–12.

### 2. This Court's Decision To Excuse Even *Zauderer*'s Less-Exacting Requirements Is Erroneous And Unprecedented

Although it is black-letter First Amendment law that the government may not compel speakers to "use their private property as a . . . 'billboard'" for the government's preferred message, *Wooley*, 430 U.S. at 715, this Court held that even the more forgiving requirements of *Zauderer* do not apply because the compelled commercial speech in this case is attributed to the City of Berkeley, Order 23–27.  That was error:  Berkeley may not conscript CTIA's members into disseminating its anti-science opinion, and avoid First Amendment scrutiny, just because it owns up to authorship.

The suggestion that "the right not to speak" has no "application to commercial speech," Order 26, is directly contrary to the Supreme Court's opinion in *United Foods*.  "Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views, or from compelling certain individuals to pay subsidies for speech to which they object."  *United Foods*, 533 U.S. at 410 (citing, among others, *Wooley*, 430 U.S. 705).  The mere "fact that the speech is in aid of a commercial purpose does not deprive respondent of all First Amendment protection."  *Id.*  Thus, the "significant distinction" that this Court posited between this case and others where the Supreme Court has invalidated attempts to force a speaker to convey the "hostile or inconsistent message of a third party," Order 24−25 (citing, among others, *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1 (1986) (plurality opinion)), does not support the contention that a standard "even more deferential to the government than the test in *Zauderer*" should apply here, *id.* at 26.  "First Amendment concerns apply *whenever* the government requires commercial speakers to "subsidize speech with which they disagree."  *United Foods*, 533 U.S. at 410–11; *see also Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 652–53 (7th Cir. 2006) (applying *Zauderer* and *PG&E* to strike down a requirement that commercial retailers "give significant space to a third party whose message potentially conflicts with the plaintiff's" by posting signs and distributing brochures); *Amestoy*, 92 F.3d at 72 ("[E]ven assuming that the compelled disclosure is purely commercial speech,

1   appellants have amply demonstrated that the First Amendment is sufficiently implicated to cause

2   irreparable harm.").

3       Nor would the absence of a "chilling" effect alter the First Amendment analysis.  Order

4   25−26; *see also id.* at 33–34 & n.12.  With or without some chill, compelled speech is inherently

5   destructive of a citizen's First Amendment right not to be forced to communicate the opinion of

6   another with which the citizen disagrees.  In any event, the City is wrong to argue that the issue in

7   this case is "chilling" CTIA's members' speech, because there is nothing to chill.  Unlike the plaintiff

8   in *Zauderer* who wanted to put out a misleading advertisement, CTIA's members do not wish to enter

9   the fray *at all* about RF emissions at the retail counter (unlike in user manuals, which already contain

10  accurate, balanced disclosures on RF energy).  The First Amendment guarantees them that right.

11      True, Berkeley's Amended Ordinance permits CTIA's members "to add 'other information'

12  at the retailer's discretion."  Order 25 (quoting Berkeley Municipal Code § 9.96.030(B)).  But the

13  compelled subsidies struck down in *United Foods* also "impose[d] no restraint on the freedom of an

14  objecting party to communicate its own message."  533 U.S. at 411.  As the Supreme Court has

15  recognized, "requir[ing a speaker] to associate with speech with which [the speaker] may disagree,"

16  is onerous precisely because it forces the speaker "either to appear to agree" with another party's

17  "views *or to respond*."  *PG&E*, 475 U.S. at 15 (emphasis added).  And it is this "pressure to

18  respond"—which applies with no less force when the topic is compelled commercial speech than

19  compelled speech on any other topic—that is "antithetical to the free discussion that the First

20  Amendment seeks to foster."  *Id.* at 15–16.

21      This Court did not cite any authority for applying minimal scrutiny to compelled commercial

22  disclosures merely because they are attributed to the government.  For good reason:  It is "firmly

23  established" First Amendment law that "the dissemination of messages others have created is entitled

24  to the same level of protection as the creation of messages," and that the "right to disseminate

25  another's speech necessarily includes the right to decide not to disseminate it."  *Nat'l Ass'n of Mfrs.*

26  *v. NLRB*, 717 F.3d 947, 956 (D.C. Cir. 2013), *overruled on other grounds* by *American Meat*

27  *Institute*, 760 F.3d 18 (quotation marks omitted).  As the Second Circuit held in striking down an

28  ordinance that required "pregnancy services centers" to disseminate a message from "the New York

City Department of Health and Mental Hygiene," a "law that requires a speaker to advertise on behalf of the government offends the Constitution even if it is clear that the government is the speaker." *Evergreen Ass'n v. City of New York*, 740 F.3d 233, 250 (2d Cir. 2014). Indeed, that court noted that the government's message was *not* "uncontroversial" precisely *because* it "require[d] pregnancy services centers to state the City's preferred message." *Id.* at 245 n.6; *see also CTIA-Wireless Ass'n v. City & Cnty. of S.F.*, 494 F. App'x 752, 753 (9th Cir. 2012) (fact sheet was not "purely factual and uncontroversial" because it "contain[ed] San Francisco's recommendations").

Refusing to require compelled commercial disclosures attributable to the government to meet even the *Zauderer* standard would mark a drastic change in the law of free speech. There would be nothing to stop other municipalities from forcing gas stations to state that "Some scientists believe that climate change is not caused by humans," or pharmacies to state that "Birth control pills have been linked to breast cancer." Those compelled commercial disclosures—which are just as misleading and scientifically baseless as Berkeley's ordinance—do not become constitutional just because they come with a header that "The City of _____ requires that you be provided with the following notice."

### B.   The Amended Ordinance Is Unconstitutional Even Under *Zauderer*

Even under *Zauderer*, the Amended Ordinance is unconstitutional. Under any level of First Amendment scrutiny, the City bears the ultimate burden of justifying its abridgment of free speech. "It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (quotation marks omitted); *see also Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("[I]n the First Amendment context," a party seeking a preliminary injunction "bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.").[3] In

---

[3]  At the preliminary injunction hearing, Berkeley suggested that the Ninth Circuit in *Crazy Ely* placed the burden of proof "on the person challenging the disclosure requirement." Hr'g Tr. at 36:5–8 (Aug. 20, 2015). But in that case, the court cited *Thalheimer* for the relevant standard of review, and evaluated the compelled disclosure requirement under *Central Hudson*, treating *Zauderer* as an application of that case. Although the court noted that the plaintiffs had

*National Ass'n of Manufacturers*, the D.C. Circuit applied *Edenfield* and held the government to its "burden of demonstrating that the [compelled disclosure] it adopted would 'in fact alleviate' the harms it recited 'to a material degree.'"  800 F.3d at 527 (quoting *Edenfield*, 507 U.S. at 771).  Thus, *Zauderer* at most *eases* the government's burden to justify infringing protected speech; it does not *relieve* the government of its burden.  *See*, *e.g.*, *American Meat Institute*, 760 F.3d at 26 ("*Zauderer,* like the doctrine of *res ipsa loquitur*, identifies specific circumstances where a party carries part of *its evidentiary burden* in a way different from the customary one." (emphasis added)); *United States v. Wenger*, 427 F.3d 840, 849 (10th Cir. 2005) ("*Zauderer*, therefore, *eases the burden* of meeting the *Central Hudson* test." (emphasis added)).

Here, Berkeley cannot meet the burden of justifying the Amended Ordinance because it is not drawn to achieve any substantial or even legitimate interest, and it is misleading, controversial, and unduly burdensome.

### 1.    The Amended Ordinance Does Not Advance Any Legitimate Interest

Berkeley cannot demonstrate that the Amended Ordinance is reasonably related to even a legitimate governmental interest, much less a substantial interest.  Mem. 9–13; Reply 4–6.  To justify its compelled disclosure, Berkeley "must demonstrate that the harms it recites are real" and that the Amended Ordinance "will in fact alleviate them to a material degree."  *Edenfield*, 507 U.S. at 771. Berkeley cannot do so, most importantly, because its message is misleading and inaccurate.  There is *never* a "legitimate reason to force retailers to affix false information on their products."  *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2009), *aff'd* by 131 S. Ct. 2729 (2011).

The City asserts only one interest in support of the Amended Ordinance:  to assure that "consumers have the information they need to make their own choices about the extent and nature of their exposure to radio frequency radiation."  Berkeley Municipal Code § 9.96.010(I); *see also* Order 27 ("Berkeley argues that it simply seeks to insure fuller consumer awareness . . . .").  But courts

---

"presented no evidence that the notice restrictions compel speech that is not purely factual," it appears to have concluded that the plaintiffs failed to meet their initial burden of making a colorable First Amendment claim.  *Crazy Ely*, 2015 WL 4465730, at *2.

have consistently held that "the public's 'right to know'" is "insufficient to justify compromising protected constitutional rights."  *Amestoy*, 92 F.3d at 73; *see also* Mem. 11–12.  "Promoting consumer awareness," even of "the government's testing procedures and guidelines," Order 27, is not, by itself, a legitimate governmental interest.  That is particularly true here, where the FCC set the RF exposure guideline low enough that it will be unnecessary to make consumers aware of the RF standard.  Compl. ¶ 70.  The case on which this Court relied in describing Berkeley's interest as "obviously . . . legitimate" noted the government's indisputably legitimate "interest in protecting consumers from 'commercial *harms*.'"  Order 27 (emphasis added) (quoting *Sorrell*, 131 S. Ct. at 2672).  But Berkeley has made no attempt to demonstrate that its Amended Ordinance targets any actual *harms* and, indeed, has repeatedly denied any such interest in adopting the Ordinance.  Mem. 10; Reply 5 & n.3.  Nor could it do so, given the FCC's view, based on expert scientific consensus, that cell phones approved for sale are safe.

In any event, the Amended Ordinance is not reasonably related to promoting awareness of the FCC's testing procedures and guidelines.  As discussed above, the ordinance still contradicts "what the FCC has said and done."  Order 28.  And rather than "track[ing] what the FCC requires," *id.*, it dramatically *changes* the manufacturer's disclosures in both content and context, Reply 11–12.  Indeed, Berkeley has already admitted that "the [Amended] Ordinance does *not* repeat the statements in manufacturers' existing consumer disclosures."  Defs.' Answer to Compl. ¶ 85 (emphasis added).

Nor is the Amended Ordinance reasonably related to any public health or safety interest.  Mem 10–11; Reply 5.  This Court's statement that there is a "reasonable scientific basis to believe that RF radiation at some levels can and do[es] present health risks," Order 28, cannot justify the Amended Ordinance.  Again, the City has disclaimed any such safety purpose.  Moreover, the science is well-settled that exposure to RF energy is not cumulative and must reach a certain threshold before it has even potentially adverse thermal effects.  *See* Compl. ¶¶ 29–30.  In any event, the Amended Ordinance does not warn consumers about exposure in excess of that *threshold*; it warns of exposure in excess of the FCC's *guidelines*, which are set well below that threshold.  The FCC has "no evidence" that exposure in excess of the guidelines from an approved phone poses "any significant health risk."  *Reassessment*, ¶ 251.  Nor has Berkeley provided any.  Instead, it has offered, at best,

"speculation or conjecture," *Edenfield*, 507 U.S. at 770, about any health or safety risk from the ostensible focus of the Amended Ordinance—exposure in excess of the guidelines.  That is emphatically not enough to support abridging the freedom of speech.

### 2. The Amended Ordinance Is Misleading

Even as amended, the message that the City would force CTIA's members to convey is inaccurate and misleading, not purely factual.  *See* Mem. 14–15; Reply 6–8.  Fundamentally, the Amended Ordinance is designed to promote the City's scientifically unsupported *opinion* that cell phones are dangerous.  Read as a whole, and even without the baseless sentence about a particular risk to children, the Amended Ordinance conveys to an average person that the federal RF guideline is the demarcation point of "safety" for cell phones.  That is, it suggests that the federal government has determined that exposure to RF energy in any amount greater than the testing guideline creates a "safety" concern.  But the Ordinance conspicuously omits the FCC's considered view, which is precisely the opposite:  The FCC has "*no* evidence that [exceeding the SAR limit] poses any significant health risk."  *Reassessment*, ¶ 251 (emphasis added).

It is obvious that the Amended Ordinance is grossly misleading by omission when one compares Berkeley's scripted message with the FCC's own statements.  Berkeley warns that consumers may exceed the RF guidelines if their phones are "ON and connected to a wireless network."  It neglects to mention that that exposure in excess of the guidelines may be possible only "with the device transmitting continuously and at maximum power," and that "using a device against the body without a spacer will generally result in an actual SAR *below* the maximum SAR tested." *Reassessment*, ¶¶ 248, 251 (emphasis added).  The City cautions that consumers must carry their phones in a particular way in order "to use [their] phone[s] safely."  Berkeley Municipal Code § 9.96.030.  But the FCC has stated that exceeding the SAR limit does not necessarily imply unsafe operation, nor do lower SAR quantities imply 'safer' operation."  *Reassessment*, ¶ 251.  That the FCC established RF guidelines "because of safety concerns," Order 32, does not, *according to the FCC*

*itself*, imply that carrying a phone "in a pants or shirt pocket or tucked into a bra" is unsafe, Berkeley Municipal Code § 9.96.030.  Berkeley's message states the opposite.[4]

This Court's wariness "about any contention that a compelled disclosure . . . is misleading simply because the disclosure does not describe with precision the magnitude of the risk," Order 32, should not, therefore, prevent it from concluding that the compelled disclosure in *this* case is misleading.  Just as a "literally accurate" opinion statement—expressly identified as such—can nonetheless be "misleadingly incomplete," *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327–28, 1331 (2015), a statement about possibilities can mislead by omission.  That "[t]obacco smoke *can* harm your children," Order 33, is indisputably accurate. Berkeley's message, which omits qualifications and context that the FCC carefully and consistently includes, is not.  Governments do not have "virtual *carte blanche*," *Omnicare*, 135 S. Ct. at 1331, to compel materially incomplete disclosures by couching them in the language of possibility.

Furthermore, the Amended Ordinance is misleading because it warns consumers about a supposed "safety" risk attributable to "radiation."  Berkeley Municipal Code § 9.96.030.  It is true, of course, that RF energy is a form of radiation.  Order at 32; *accord* Compl. ¶ 25.  But CTIA's members cannot be forced to use that misleading and alarming term, which the FCC has warned "is used, colloquially, to imply that ionizing radiation (radioactivity), such as that associated with nuclear power plants, is present."  FCC, *Radiofrequency Safety:  Frequently Asked Questions*, *available at* http://goo.gl/rO9P9x.  *Contra* Order 32 (dismissing as "unlikely" "CTIA's contention that there may be a negative association with nuclear radiation (ionizing radiation)").  The City cannot defend the ordinance as supposedly "consistent with the FCC's directive," Order 31, when the City uses the precise terminology that the FCC deliberately avoids given its tendency to confuse.  The point is not that the Amended Ordinance should "make the finer distinction that RF energy is non-ionizing

---

[4]  Furthermore, the Amended Ordinance misleadingly states that cell phone user manuals discuss body-worn distance as a safety issue.  In fact, the vast majority of manuals "make consumers aware of the need to maintain the body-worn distance . . . *if they want to ensure that their actual exposure does not exceed the SAR measurement obtained during testing*."  *Reassessment*, ¶ 248 (emphasis added).

radiation rather than ionizing radiation," *id.* at 32, but that the City deliberately used an inflammatory term, fraught with negative associations, in order to stoke consumer anxiety.

That the Amended Ordinance merely *might* be misleading to consumers is enough to doom it under *Zauderer*.  *See, e.g.*, *Nat'l Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 371 (D.C. Cir. 2014), *adhered to on reh'g*, 800 F.3d at 530 ("At all events, it is *far from clear* that the description at issue—whether a product is 'conflict free'—is factual and non-ideological." (emphasis added)); *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1216 (D.C. Cir. 2014), *overruled on other grounds* by *American Meat Institute*, 760 U.S. 18 (concluding that the required images were not purely factual and uncontroversial in part because "many of the images chosen by FDA *could* be misinterpreted by consumers" (emphasis added)); *San Francisco*, 494 F. App'x at 753 (holding that warning was not "purely factual and uncontroversial" where its "language *could* prove to be interpreted by consumers as expressing San Francisco's opinion that using cell phones is dangerous" (emphasis added)).  Just as the First Amendment allows the government to regulate or ban "potentially misleading" commercial speech, *see Dwyer v. Cappell*, 762 F.3d 275, 280 (3d Cir. 2014), it forbids the government from foisting potentially misleading messages on private speakers.

### 3.   The Amended Ordinance Is Controversial

Like the enjoined Ordinance, the Amended Ordinance is controversial.  *See* Mem. 15–16; Reply 10.  It forces CTIA's members to take the side of those who hold strong yet scientifically unsupported views about the safety of cell phones, thus implicating a matter of public controversy, Mem. 15–16 (citing *Evergreen Ass'n*, 740 F.3d at 245 n.6).  It is misleading and one-sided.  *Id.* at 16 (citing, *e.g.*, *Stuart v. Camnitz*, 774 F.3d 238, 246 (4th Cir. 2014)).  It uses inflammatory language designed to provoke public fear.  *Id.* (citing *R.J. Reynolds*, 696 F.3d at 1216–17); *see also American Meat Institute*, 760 F.3d at 27 (observing that "the word 'slaughter'" could be controversial because it "might convey a certain innuendo").  And it requires CTIA's members to disseminate the City's preferred message.  *Evergreen Ass'n*, 740 F.3d at 245 n.6; *Entertainment Software Ass'n*, 469 F.3d at 652–53 (holding that "[r]equiring a private party to give significant space to a third party whose message potentially conflicts with the plaintiff's" was "*neither* purely factual nor uncontroversial" (emphasis added)).

The Sixth Circuit's view of "controversial" that this Court previously accepted—"that the term 'uncontroversial' should generally be equated with the term 'accurate,'" Order 30 (citing *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012))—is a minority position. As the D.C. Circuit has persuasively explained, "'uncontroversial,' as a legal test, must mean something different than 'purely factual.'" *National Ass'n of Manufacturers*, 800 F.3d at 528. Compelled disclosures are invalid under *Zauderer* when they are "controversial for some reason *other* than dispute about simple factual accuracy." *American Meat Institute*, 760 F.3d at 27 (emphasis added). Indeed, the Ninth Circuit struck down San Francisco's similar mandatory cell-phone disclosure because it was controversial, even though the district court found that San Francisco's "statements . . . were accurate and not misleading." *San Francisco*, 494 F. App'x at 753−54; *see also id.* at 754 (affirming injunction of original ordinance because its statements were "even more misleading and controversial"). Yet even if the Sixth Circuit's test were applied, the Amended Ordinance here is *not* accurate, because it is grossly misleading by omission.

### 4.     The Amended Ordinance Is Unduly Burdensome

The Amended Ordinance, like the enjoined Ordinance, supplants CTIA's members' carefully considered messages with the City's preferred message at a crucial moment:  the point of sale.  Mem. 16–17; Reply 10–11.  If Berkeley may impose its unfounded concerns about cell phone dangers on CTIA's members, there will be nothing to stop any other state, county, or city from doing the same, resulting in a patchwork of overlapping and inconsistent disclosure requirements.  Mem. 17; Reply 11.  It is simply not the case that the resulting burden on CTIA's members "is nothing more than minimal." *Contra* Order 34.  Forcing CTIA's members to engage in counter-speech is hardly a minimal First Amendment injury, as the Supreme Court has repeatedly recognized. *See*, *e.g.*, *PG&E*, 475 U.S. at 15–16.

## III.     Despite The City's Amendment, The Preliminary Injunction Continues To Be Necessary

The change that Berkeley made to the Ordinance does not warrant dissolution of this Court's injunction.  Instead, all four factors from *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), continue to favor enjoining the Amended Ordinance. *First*, as demonstrated above, CTIA is likely to succeed on the merits because the Amended Ordinance is preempted by

federal law and unconstitutionally abridges the First Amendment rights of CTIA's members.  *See also* Mem. 7–21; Reply 2–13.  At the very least, CTIA has "show[n] that there are serious questions going to the merits" of its suit.  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quotation marks omitted).

*Second*, CTIA's members will suffer irreparable injury if the Amended Ordinance is not enjoined.  Notwithstanding their First Amendment right to avoid weighing in with their customers at the point of sale on the debate over RF energy, they will be compelled to respond to Berkeley's speech in an attempt to correct Berkeley's misleading disclosure.  *See* Mem. 21.  And even if this Court finds it more likely than not that the Amended Ordinance is lawful, Berkeley's members will still face irreparable injury while the ordinance is reviewed on appeal.  *See id.* at 22–23; Reply 13–14.  If the appellate court ultimately finds that Berkeley's "safety warning" is misleading, then CTIA will not be able to undo the damage to its reputation and customer goodwill from having put out a misleading disclosure that generated fear in consumers about "exposure" to cell phone "radiation."  *See* Mem. 22.

*Third*, the balance of harms favors CTIA because an injunction will not harm the City at all.  Mem. 23–24; Reply 14–15.  Even if this Court disagrees about the likely legality of the Amended Ordinance, the City, which disclaims that the legislation has anything to do with safety, has not demonstrated any pressing need to enforce it immediately.  Mem. 23–24.  In any event, the City could simply disseminate its message itself in the interim.

*Fourth*, the public interest would be served by enjoining the Amended Ordinance.  Mem. 24–25; Reply 15.  The Amended Ordinance will scare consumers into changing the way that they use their cell phones (including turning them off or disconnecting them from the network) or reducing the use of their phones altogether—thereby decreasing the public's full use of wireless technology, creating needless public anxiety, and diluting the force of truly important safety warnings, all without offering *any benefits* in increased safety.  Just like the enjoined Ordinance, the Amended Ordinance "could materially deter sales" of cell phones, Order 15, which are a significant part of the lives of American consumers and play an important role in promoting public safety, Mem. 24–25.  The public interest also would not be served by enforcing an unconstitutional law.  *Id.* at 25.

This Court previously concluded that the likelihood of irreparable harm, balance of equities, and public interest factors did not favor CTIA—assuming the Ordinance were amended to delete the preempted sentence about children—only because the Court viewed CTIA's other claims on the merits as "weak." Order 34–35. But even if this Court believes that CTIA is not ultimately likely to prevail, all of the other factors strongly favor CTIA. As a result, the injunction remains warranted.

## IV.   In The Alternative, This Court Should Grant CTIA An Injunction Pending Appeal

If this Court grants Berkeley's motion to dissolve the preliminary injunction, CTIA respectfully requests that it enter an injunction pending appeal. *See* Fed. R. Civ. P. 62(c); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011) (granting in part a motion for injunction pending appeal despite previously dissolving an injunction). An injunction pending appeal is appropriate in this case for the same reasons that a preliminary injunction is necessary. In particular, the Ninth Circuit has held that an injunction pending appeal should be entered where a party has raised "serious questions" and the balance of hardships tips sharply in its favor. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs.*, 472 F.3d 1097, 1100 (9th Cir. 2006). That is the case here: CTIA has substantial arguments based on preemption and the First Amendment, and it will suffer direct, immediate harm if the ordinance is enforced. On the other side, even the City acknowledges that there are no corresponding "safety" benefits to be gained from the ordinance. The Ninth Circuit should have an opportunity to resolve these important legal issues without CTIA's members being forced to risk their customer relationships and First Amendment freedoms in the process.

## CONCLUSION

For these reasons, and for the reasons set forth in its Memorandum, Reply, and Brief in Response to *Amicus Curiae* Natural Resources Defense Council, CTIA respectfully requests that this Court deny Berkeley's motion to dissolve the preliminary injunction or, in the alternative, that this Court grant CTIA an injunction pending appeal.

December 1, 2015                                    By:  /s/ Theodore B. Olson

                                                   Theodore B. Olson
                                                   Helgi C. Walker
                                                   Joshua S. Lipshutz
                                                   Joshua D. Dick
                                                   Michael R. Huston
                                                   Jacob T. Spencer

                                                   GIBSON, DUNN & CRUTCHER LLP

                                                   *Attorneys for Plaintiff*
                                                   *CTIA – The Wireless Association®*